UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY Q. NGUYEN,
        Plaintiff,

                                                No. 1:09-cv-733

-v-

                                            HONORABLE PAUL L. MALONEY

UNITED AIR LINES, Inc.
        Defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Defendant United Air Lines filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiff Henry Nguyen is a flight attendant formerly employed by Defendant United Airlines. Plaintiff Nguyen alleges Defendant United Air Lines terminated his employment in violation of federal law. Plaintiff claims his termination was motivated by his race, national origin, and sex. Plaintiff brought an action alleging violation of Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000 *et seq.*), and violation of § 1981 of the Civil Rights Act of 1866 (42 U.S.C. § 1981). (Pl.'s Am. Compl. ¶ 9.) Plaintiff relies upon 42 U.S.C. § 2000e-5(f)(3) to establish jurisdiction for his Title VII claim, and also suggests the suit satisfies the diversity of citizenship and amount in controversy requirements pursuant to 28 U.S.C. § 1332. (*Id.* ¶ 10.)

Defendant argues the case should be dismissed for lack of subject matter jurisdiction because Plaintiff's claim is precluded by the Railway Labor Act ("RLA") (45 U.S.C. § 151, *et seq.*). (Def's Mem. in Supp. of Mot. to Dismiss Pl's Am. Compl. 1.) Defendant suggests Plaintiff's claim is a "minor dispute" of the kind relegated by the RLA to the exclusive jurisdiction of private adjustment boards. (*Id.* at 2.)

**I. Standard of Review**

When challenged by a motion filed under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *EEOC v. Hosanna-Tabor Evangelical Lutheran Church and Sch.*, 597 F.3d 769, 776 (6th Cir. 2010) (citing *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007)). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. In a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id.* In this case, Defendant has made a facial challenge to the complaint. The court accepts as true the allegations in the complaint in order to determine whether subject matter jurisdiction exists.

## II. Analysis

The issue raised by Defendant's motion is whether Plaintiff's claim is an independent assertion of a federal statutory civil right, or a minor employment dispute under the exclusive jurisdiction of the RLA resolution procedures. Defendant attempts to characterize the Plaintiff's claim as a "minor dispute" involving the scheduling rules contained in the collective bargaining agreement. (Def's Mot. to Dismiss Pl's Am. Compl. ¶ 3.)

The RLA promotes stability in labor-management relations by providing effective and efficient remedies for labor disputes arising out of the interpretation of collective bargaining agreements. *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (per curiam); *Stephens v. Norfolk and Western Ry. Co.*, 792 F.2d 576, 580 (6th Cir. 1986). The RLA was extended to cover the airline industry in 1936. *Hawaiian Airlines, Inc. v. Finazzo*, 512 U.S. 246, 248 (1994) (citing 45 U.S.C. § 153). The RLA creates a mandatory arbitral mechanism for resolving two classes of disputes: major disputes and minor disputes. *Id.* at 252.

> The first class, those concerning "rates of pay, rules or working conditions," are deemed "major" disputes. Major disputes relate to "the formation of collective [bargaining] agreements or efforts to secure them. The second class of disputes, known as "minor" disputes, "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Thus, "major disputes seek to create contractual rights, minor disputes to enforce them."

*Id.* at 252-53 (citations omitted) (alterations in original); *see also Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters*, 274 F.3d 1023, 1028 (6th Cir. 2001). Minor disputes are subject to compulsory and mandatory arbitration by a board that has exclusive jurisdiction over the dispute. *See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303-04 (1989); *Airline Prof'ls Ass'n*, 274 F.3d at 1028; *Stephens*, 792 F.2d at 580; *see also Int'l Bhd. of Teamsters, AFL-CIO v. United Parcel Serv.*, 447 F.3d 491, 498 (6th Cir. 2006) ("In 1936, Congress extended most of the obligations and rights established by the Act to the airline transport industry, requiring the parties to use 'system, group, or regional boards of adjustment,' instead of the National Railroad Adjustment Board, to resolve minor disputes. Congress gave the system boards the same exclusive jurisdiction over 'minor disputes' in the airline industry that the National Railroad Adjustment Board has over such disputed in the railroad industry.") (citations

omitted).

The existence of a collective bargaining agreement does not mean *all* disputes between the employer and employees are to be handled within the confines of the collective bargaining agreement. As indicated above, a minor dispute is one that "may be conclusively resolved by interpreting the existing [CBA]." *Consol. Rail*, 491 U.S. at 305. In clarifying on the phrase "conclusively resolved," the Supreme Court explained that a dispute is minor if it "does not involve rights that exist independent of the CBA."[1] *Hawaiian Airlines*, 512 U.S. at 265. The Court has further explained that the availability of arbitration does not bar individual employees from bringing claims under federal statutes. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411-12 (1988) ("Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong policies encouraging arbitration, 'different considerations apply *where the employee's claim is based on rights arising out of a statute designed to provide maximum substantive guarantees to individual workers.*'") (citations omitted) (emphasis added in *Lingle*); *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 737 (1981) ("While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute

---

[1] Some courts have used the phrase "arguably justified" to explain when a dispute is a minor dispute. *See e.g., Ass'n of Flight Attendants v. Mesa Air Group, Inc.*, 567 F.3d 1043, 1047 (9th Cir. 2009) ("[T]he ensuing dispute is minor if the [employer's] action is arguably justified by the terms of the parties' collective bargaining agreement."). In *Hawaiian Airlines*, the Supreme Court also clarified that the phrase "arguably justified" is the standard used to distinguish major disputes from minor disputes. 512 U.S. at 265-66. The "arguably justified" test says "nothing about the threshold question of whether the dispute was subject to the RLA in the first place." *Id.* at 266.

designed to provide minimum substantive guarantees to individual workers.") The Sixth Circuit Court of Appeals has noted "disputes over rights granted by other provisions of federal and state law, which are not otherwise covered by any of the previous dispute categories, are largely unaffected by the [RLA]." *Int'l Bhd. of Teamsters*, 447 F.3d at 497.

Courts generally determine whether particular employee's claims are precluded by the RLA on a case-by-case basis by looking at the facts of the particular claim. As Defendant notes, several courts have encountered circumstances where the RLA precludes litigation of other claims.[2] *See e.g.*, *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001) ("We feel the best way to harmonize these two statutes is to allow a plaintiff employee to bring an [Americans with Disabilities Act] claim in federal court against his employer (even if his employment is governed by a CBA which is subject to the RLA), *unless* the resolution of his ADA claim requires the court to interpret the CBA's terms as a potentially dispositive matter. Accordingly, because Brown's claim requires a potentially dispositive intepretation of the CBA's seniority provisions, we hold the RLA precludes his claim."); *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997) (finding that the plaintiff's claim arising under the Age Discrimination in Employment Act which was based on the seniority provision of the CBA was precluded by the RLA); *Crayton v. Long Island R.R.*, No. 05-1721, 2006 WL 3833114, at * 5 (E.D.N.Y. Dec. 28, 2006) (precluding plaintiff's Title VII claim because it required determining whether he was not disqualified for the supervisor position, which required the

---

[2]In addition to the cases discussed, Defendant also mentions *Moss v. Norfolk Western Ry. Co.*, No. 02-74237, 2003 WL 21817127 (E.D. Mich. July 22, 2003). The *Moss* opinion is not helpful because the plaintiff's complaint included only two factual references to his discrimination claim and the district court acknowledged that the claim was not well developed.

plaintiff to show that an agreement should have been removed from his employment file under the terms of the governing CBA); *Caldwell v. Norfolk S. Corp.*, No. 96-cv-443, 1998 WL 1978291, at * 5 (W.D.N.C. Mar. 3, 1998) (finding the plaintiff's Title VII claim was precluded by the RLA because, as part of the plaintiff's prima facie case, the court would have to determine whether the employer was required to award the position on the basis of seniority, which required interpreting the CBA). In contrast, a number of appellate courts have concluded the RLA does not preclude consideration of a plaintiff's Title VII claim. *See e.g.*, *Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 349 (5th Cir. 2008) (permitting claims under Title VII and the ADA where the collective bargaining agreement was "relevant to, but not dispositive of" plaintiff's claims); *Benson v. Northwest Airlines*, 62 F.3d 1108, 1115 (8th Cir. 1995) (holding a claim under the ADA was not precluded by the RLA); *Felt v. Atchison, Topeka, & Santa Fe Ry. Co.*, 60 F.3d 1416, 1419-20 (9th Cir. 1995) (concluding Title VII statutory rights exist independent of the collective bargaining agreement and permitting suit); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1034 (2d Cir. 1993) (finding subject matter jurisdiction for Plaintiffs' claims despite the need to consider portions of the collective bargaining agreement); *see also Atchison, Topeka, & Santa Fe Ry. Co.*, 480 U.S. 557, 564 (1987) (finding arbitration under the RLA did not preclude a FELA action).

Were Plaintiff suing merely to vindicate his rights under the collective bargaining agreement, the claim would be a "minor dispute." However, Plaintiff's claim is not simply that Defendant departed from its agreed upon scheduling rules, but that he was singled out for discriminatory employment practices, including a heavier workload, and ultimately discharged because he was a member of a protected class. Plaintiff alleges not a termination counter to the
6

guidelines of the collective bargaining agreement—which would certainly be precluded by the RLA—but unlawful employment practices, including discharge, because of his race, sex, and national origin in violation of Title VII and § 1981. (Pl.'s Am. Compl. ¶¶ 43-55). His interest in being free from discrimination is not a contractual right contained in the collective bargaining agreement, but a statutory right guaranteed by Title VII and § 1981. Statutory civil rights provide individual employees a "nonwaivable, public law right to equal employment opportunities that [are] separate and distinct" from rights created through a collective bargaining process. *Barrentine*, 450 U.S. at 737-38. The power to enforce statutory civil rights rests with the federal courts. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44-45 (1974). Although resolution of Plaintiff's claim may require the court to examine whether the actions taken by Defendant were pretextual, which may or may not involve looking to the CBA, the essential aspect of Plaintiff's cause of action is that he was discriminated against on the basis of an impermissible characteristic, a claim that does not require interpreting the CBA. *See Smith v. Northwest Airlines*, 141 F.Supp.2d 936, 943-44 (W.D. Tenn. 2001).

Defendant contends that determination of Plaintiff's claim would require the court to interpret and apply the collective bargaining agreement, thereby putting the dispute outside the jurisdiction of the court. (Def's Mot. to Dismiss Pl's Am. Compl. ¶ 4.) Defendant relies upon *Dotson v. Norfolk s. Ry. Co.*, 52 F.App'x 655 (6th Cir. 2002) (per curiam) as authority from the Sixth Circuit to suggest minor disputes include those "inextricably intertwined with consideration of the terms of the labor contract." (Def's Mem. in Supp. of Mot. to Dismiss Pl's Am. Compl. 10.) In *Dotson*, the Sixth Circuit concluded the plaintiff's disparate treatment claims required interpretation of the CBA. *Id.* at 658. The circuit court agreed with the district

7

court that whether the plaintiff should have been disciplined was governed by the CBA, whether the plaintiff should have been able to sit at the front desk was governed by the seniority provision of the CBA, and whether the plaintiff was entitled to a clerk position was governed by the CBA's qualification provisions. *Id.* At the same time, the plaintiff's hostile work environment claim and retaliation claim were not precluded, although they were resolved in the defendant's favor. *Id.* at 658-60.

The facts in *Dotson* are sufficiently dissimilar from those here to require a different outcome. None of Plaintiff's claims here require the court to determine his qualifications or the seniority provisions of the CBA. Although Plaintiff does include a discussion of some of the rules contained in the CBA in his complaint, the elements of his claims do not require the court to interpret the CBA. He alleges he was singled out to work extra shifts, and fired, because he is a member of a protected class. No requirement exists that the collective bargaining agreement be totally irrelevant to the dispute. *Carmona*, 536 F3d at 349; *Jones v. Roadway Exp., Inc.*, 931 F.2d 1086, 1090 (5th Cir. 1991) ("[W]e do not require that the CBA be irrelevant to the dispute; either party may still use the CBA to support the credibility of its claims."). Plaintiff's claims cannot be conclusively resolved looking at the collective bargaining agreement, but instead require a factual examination of the Defendant's acts and motivation.

### III. Conclusion

In the present case, Defendant's conduct and motivation in taking adverse employment action against Plaintiff are determinations within the court's purview. Plaintiff's claim arises not under the terms of the CBA, but under federal civil rights statutes. He asserts civil rights independent of the collective bargaining agreement. Accordingly, his dispute is not a minor one

8

under the jurisdiction of the RLA, but a civil rights claim properly brought before this Court.

## ORDER

For the reasons provided in the accompanying opinion, Defendant's motion to dismiss (Dkt. No. 21) is **DENIED.  IT IS SO ORDERED.**


Date:   July 23, 2010                                                                         /s/ Paul L. Maloney
                                                                                              Paul L. Maloney
                                                                                              Chief United States District Judge